# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CHRISTOPHER L. RHONE,

    *Plaintiff,*

v.

                                                     Case No. 24-4060-EFM

KENNETH SCHMANKE and
K1 HOSPITALITY, LLC,

    *Defendants.*

## MEMORANDUM AND ORDER

    Before the Court are three motions in pro se Plaintiff Christopher L. Rhone's suit against Defendants Kenneth Schmanke and K-1 Hospitality, LLC. In this suit, Plaintiff alleges Defendants engaged in discriminatory employment practices in violation of federal and state law. First, Defendant Kenneth Schmanke filed a Motion to Dismiss all claims against him because the statutes under which Plaintiff seeks relief do not contemplate individual-capacity liability (Doc. 11). Second, Defendant K-1 Hospitality filed a Motion for Summary Judgment, asserting that because it employs fewer than 15 people it is not subject to the federal statutes under which Plaintiff seeks relief (Doc. 16). Finally, Plaintiff filed a Motion to Deny Defendants' Motions, requesting that the Court allow the suit to proceed to discovery (Doc. 31). For the reasons stated herein, the Court grants Defendants' motions and denies Plaintiff's motion as moot.

## I.     Factual and Procedural Background[1]

Defendant Kenneth Schmanke owns and operates several businesses, including Defendant K-1 Hospitality. K-1 Hospitality operates a small café in Topeka, Kansas. Schmanke also owns K-1 Realty, LLC and Townsite Tower QOF, LLC.

In May of 2022, Plaintiff was hired by K-1 Hospitality to perform culinary tasks and serve as a backup cashier. Early on in his employment with K-1 Hospitality, Plaintiff observed that other employees took breaks and ate meals at their convenience. But Plaintiff was only allowed a 10-minute smoke break after he requested permission. He also observed that other employees ate meals without compensating K-1 Hospitality. But Plaintiff was required to pay for his own meals. Plaintiff was often rushed through tasks and was told that he should be working faster. In late June of 2022, Plaintiff discovered that he had been performing duties that were assigned to other employees. His performance of additional tasks explained why he felt rushed and did not get breaks like other employees. Also in June of 2022, Plaintiff was blamed for several kitchen mistakes.

Plaintiff is disabled as the result of a spinal injury. He requested an accommodation for his disability, but his request was denied. Throughout his employment with K-1 Hospitality, Plaintiff was the subject of derogatory comments, verbal abuse, and slurs. These comments were often spoken in Spanish. Several other K-1 Hospitality employees are Hispanic and speak Spanish throughout the workday. When Plaintiff reported these issues, he faced increased scrutiny, was denied holiday pay, and was denied the ability to participate in the employee bonus program.

Plaintiff was terminated on July 15, 2022. Plaintiff applied for unemployment benefits, but he was denied those benefits because of the information that K-1 Hospitality provided to the

---

[1] The facts are taken from Plaintiff's Complaint unless indicated otherwise.

Kansas Department of Labor regarding Plaintiff's employment. K-1 Hospitality contends that it did not terminate Plaintiff, but rather Plaintiff voluntarily left his job on July 13, 2022.

Plaintiff filed a discrimination complaint with the EEOC on March 14, 2023, and received a notice of his right to sue on April 4, 2024. He filed this pro se suit on July 2, 2024. Broadly, Plaintiff asserts that he was discriminated against based upon his age, disability, and race. He asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"),[2] the Age Discrimination in Employment Act of 1967 ("ADEA"),[3] the Americans with Disabilities Act of 1990 ("ADA"),[4] as well as claims under several state statues including, K.S.A. § 40-1009. These claims include wrongful termination, failure to accommodate, disparate treatment, retaliation, and harassment.

On August 16, 2024, Schmanke filed his Motion to Dismiss, and K-1 Hospitality filed its Motion for Summary Judgment. Timely responses and replies were filed. On October 28, 2024, Plaintiff filed his Motion to Deny Defendants' Motion to Dismiss. No response was filed to Plaintiff's motion. The matters are fully briefed and ripe for the Court's ruling.

## II.     Legal Standard

Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers."[5] A pro se litigant is entitled to a liberal construction of his pleadings.[6] If a court can reasonably read a pro se complaint in such a way that it could state a claim on which it could

---

[2] 42 U.S.C. § 2000e *et seq.*

[3] 29 U.S.C. § 621 *et seq.*

[4] 42 U.S.C. § 12101 *et seq.*

[5] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[6] *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because [plaintiff] appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.").

prevail, it should do so despite "failure to cite proper legal authority . . . confusion of various legal theories . . . or [Plaintiff's] unfamiliarity with pleading requirements."[7] However, it is not the proper role of a district court to "assume the role of advocate for the pro se litigant."[8]

### III. Analysis

**A.     Schmanke's Motion to Dismiss**

Schmanke seeks dismissal of the claims against him. He asserts that because Title VII, the ADA, and the ADEA do not permit individual-capacity liability, Plaintiff's claims thereunder must be dismissed for failure to state a claim upon which relief can be granted. Plaintiff responds by asserting that Schmanke is liable pursuant to 42 U.S.C. § 1981, and under the "cat's paw" theory of liability. The Court finds that Schmanke is not subject to liability under any of Plaintiff's theories.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[9] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[10] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[11] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[12] As it relates to motions to dismiss generally,

---

[7] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[8] *Id.*

[9] Fed. R. Civ. P. 12(b)(6).

[10] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[11] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[12] *Iqbal*, 556 U.S. at 678–79.

the court "accept[s] the well-pleaded allegations of the complaint as true and construe[s] them in the light most favorable to the plaintiff."[13] "Well-pleaded" allegations are those that are facially plausible such that "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."[14]

None of the statutes under which Plaintiff seeks relief provide for individual-capacity liability. "[P]ersonal capacity suits against individual supervisors are inappropriate under Title VII."[15] Likewise, individual supervisors are not liable under the ADA or ADEA.[16] Instead, these statutory schemes permit suits against a plaintiff's employer.[17] Plaintiff's Complaint makes clear that K-1 Hospitality was his employer, not Schmanke. Because Schmanke was not Plaintiff's employer, these federal statutes cannot be construed to impose individual liability on Schmanke.

Recognizing that he must attach liability to Schmanke in some other way, Plaintiff invokes the "cat's paw" theory.[18] Under this theory, Plaintiff asserts that Schmanke is personally liable because an employer can be held liable when a supervisor's discriminatory intent influenced the final employment decision.[19] But Plaintiff's swipe at the cat's paw theory misses the mark. Indeed, a cat's paw case occurs when a decisionmaker blindly relies on a nondecisionmaker's singular

---

[13] *Ramirez v. Dep't of Corr., Colo.*, 222 F.3d 1238, 1240 (10th Cir. 2000).

[14] *Iqbal*, 556 U.S. at 678.

[15] *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996).

[16] *See Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 744 (10th Cir. 1999) ("[T]he ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition."); *Fuller v. Kan. Dep't of Child. & Fams.*, 805 F. App'x 601, 605 (10th Cir. 2020) ("[T]he ADEA permits suit only against employers and not against supervisory employees.").

[17] *See Fuller*, 805 F. App'x at 605.

[18] *See Staub v. Proctor Hosp.*, 562 U.S. 411, 415 n.1 (2011) (explaining that the term "cat's paw" is derived from one of Aesop's fables and was "injected into United States employment discrimination law by Judge Posner in 1990").

[19] *Staub*, 562 at 422.

influence to terminate an employee.[20] But this theory attaches liability to the *employer*, not to the individual acting on discriminatory or retaliatory intent. Again, because K-1 Hospitality was Plaintiff's employer, even if Plaintiff could show Schmanke's or another nondecisionmaker's discriminatory intent, liability would attach to K-1 Hospitality—not to Schmanke in his individual capacity. As such, Plaintiff's claims against Schmanke fail and must be dismissed.

For the first time in his Response, Plaintiff espouses a new claim against Schmanke: that he is liable under 42 U.S.C. § 1981. Adding a claim at this stage is inappropriate.[21] If Plaintiff seeks to assert this new claim, he must seek leave to file an amended complaint.[22]

## B.     K-1 Hospitality's Motion for Summary Judgment

K-1 Hospitality moves for summary judgment on Plaintiff's claims against it asserting that, because it does not employ more than 10 people, it does not fit the definition of "employer" under Title VII, the ADA, or the ADEA. Plaintiff contends that K-1 Hospitality has more than 10 employees. Further, Plaintiff asserts that the Court should include entities related to K-1 Hospitality in considering how many people K-1 Hospitality employs. The Court finds that K-1 Hospitality does not meet the definition of "employer" under these statutory schemes because it employs no more than 10 people.

The minimum number of employees to be considered an "employer" under Title VII or the ADA is 15.[23] Similarly, the ADEA only applies to employers with 20 or more employees.[24]

---

[20] *Id.* at 416.

[21] *Boyer v. Bd. of Cnty. Comm'rs of Johnson Cnty.*, 922 F. Supp. 476, 482 (D. Kan. 1996) ("It is inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time.").

[22] *Mallard v. Howard*, 2024 WL 726983, at *10 (D. Kan. Feb. 22, 2024).

[23] *Butler*, 172 F.3d at 744 (citing 42 U.S.C. §§ 2000e(b), 12111(5)(a)).

[24] *Hamilton v. Brad Sys., Inc.*, 2006 WL 2522560, at *9 (D. Kan. Mar. 24, 2006) (citing 29 U.S.C. § 630(b)).

Whether a defendant has the requisite number of employees to qualify as an "employer" under these statutes is a threshold jurisdictional issue.[25] As such, it should be resolved under Federal Rule of Civil Procedure 12(b)(1) analysis rather than under the standard for summary judgment.[26] Accordingly, the Court will address this issue under Rule 12(b)(1) rather than as a motion for summary judgment. This distinction is important because "[w]here 12(b)(1) analysis is concerned . . . the district court is permitted to resolve factual disputes and to reach a disposition on the ultimate issue in spite of conflicting evidence."[27]

Federal courts are courts of limited jurisdiction, and a presumption exists against exercising jurisdiction over a case.[28] The party asserting jurisdiction bears the burden of establishing its existence.[29] Thus, the Court may exercise jurisdiction only when specifically authorized to do so and must dismiss a claim if it becomes apparent at any stage of the proceedings that it lacks jurisdiction.[30] The party asserting jurisdiction has the burden of establishing subject matter jurisdiction.[31] Generally, a Rule 12(b)(1) motion to dismiss takes one of two forms: a facial attack or a factual attack.[32] In a factual attack, the moving party does not attack the sufficiency of the complaint but asserts that the Court lacks subject matter jurisdiction based on facts outside of the pleadings.[33] In that instance, "a party may go beyond allegations contained in the complaint and

---

[25] *Calvert v. Midwest Restoration Servs., Inc.*, 35 Fed. App'x 798, 801 (10th Cir. 2002).

[26] *Id.*

[27] *Id.* at 801 n.2.

[28] *See In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1170 (10th Cir. 2023) (citations omitted).

[29] *Id.*

[30] *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018).

[31] *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir.2008).

[32] *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995).

[33] *Id.* at 1003.

challenge the facts upon which subject matter jurisdiction depends."[34] When reviewing a factual attack, the Court "may not presume the truthfulness of the complaint's factual allegations."[35] Rather, the Court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)" without needing to convert the motion to summary judgment.[36]

Here, K-1 Hospitality asserts that it did not employ more than 10 people during the relevant timeframe. K-1 Hospitality points to Schmanke's affidavit and a payroll summary report, attached as exhibits to the Answer, to support its averment that it employed no more than 10 employees. Indeed, these documents establish that K-1 Hospitality did not employ more than 10 people.

Plaintiff responds by broadly asserting that K-1 Hospitality employs seasonal, part-time, and contract workers that have been excluded from K-1 Hospitality's count. However, Plaintiff offers no evidence to support this claim—none of the documents that Plaintiff attaches to any of his pleadings mention other seasonal, part-time, or contract workers employed by K-1 Hospitality. Without evidence contrary to K-1 Hospitality's demonstration that it employs no more than 10 people, the Court must find that K-1 Hospitality does not meet the definition of an employer under Title VII, the ADA, or the ADEA.

Next, Plaintiff asserts that applying the "integrated-enterprise" doctrine overcomes the minimum-number-of-employees barrier, pushing K-1 Hospitality's employment practices into the purview of Title VII, the ADA, and the ADEA. Under the integrated-enterprise doctrine (also known as the "single employer" doctrine), two nominally separate companies may be so

---

[34] *Id.*

[35] *Id.*

[36] *Id.*

interrelated that they constitute a single employer subject to liability.[37] Although the Tenth Circuit has not formally adopted this test, it has applied it under similar circumstances.[38] The integrated-enterprise test contains four factors: "(1) interrelation of operations; (2) centralized control over labor relations; (3) common management; and (4) common ownership or financial control."[39] If the test is met, the number of employees of a related entity would be included in a defendant's employee count.[40]

Plaintiff points to three LLCs owned by Schmanke: K-1 Hospitality, K-1 Realty, and Townsite Tower. Plaintiff attaches documents filed with the Kansas Secretary of State by these LLCs. These documents demonstrate that Schmanke is the owner of each of the LLCs. Showing that Schmanke is the owner of these three entities goes to the fourth factor of the integrated enterprise test—common ownership and financial control.

Plaintiff also attaches a document that indicates that K-1 Realty is the registered agent of a fourth entity, Encina Investment Group. It is unclear what Plaintiff intends to demonstrate through this document, but the Court construes it to indicate that K-1 Realty and Encina Investment Group have some common management—the third factor.

Plaintiff provides no clear evidence to support a finding for the first factor, interrelated operations, or the second factor, centralized control over labor relations.

But even if the Court were to find that all four factors weighed in Plaintiff's favor, Plaintiff provides no evidence that these other entities have *any* employees.[41] Because there is no evidence

---

[37] *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1184 (10th Cir. 1999).

[38] *Calvert*, 35 Fed. App'x at 801 n.1.

[39] *Id.* (citing *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1184 (10th Cir. 1999)).

[40] *Id.*

[41] One of the documents that Plaintiff attaches to his Response to K-1 Hospitality's Motion for Summary Judgment is a screenshot of an article published in the Topeka Capital Journal. The article discusses Schmanke's

of additional employees that should be lumped into K-1 Hospitality's employee count, Plaintiff has not shown that K-1 Hospitality meets the minimum number of employees to be considered an "employer" under these federal statutes. As such, Plaintiff has not met his burden to demonstrate that K-1 Hospitality is subject to suit under Title VII, the ADA, or the ADEA.

### C.     Plaintiff's State Law Claims

Plaintiff appears to assert several unlawful employment practices claims pursuant to K.S.A. § 44-1009, as well as a false statement or perjury claim against Defendants. In each of their motions, Defendants request that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Supplemental jurisdiction "is exercised on a discretionary basis, keeping in mind considerations of judicial economy, convenience and fairness to the litigants."[42] "The Court may decline to exercise supplemental jurisdiction if only issues of state law remain after the court has dismissed all federal claims."[43] In fact, "courts routinely decline to exercise supplemental jurisdiction over state-law claims when federal claims do not survive."[44] As no federal claims remain in this case, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, Plaintiff's state law claims are dismissed.

---

purchase of the historic Downtown Topeka Post Office building through K-1 Realty. A sentence in that article states "With three people working . . . the facility remained opened for business." From the screenshot provided, it is unclear whether the three people working were employed before or after Schmanke purchased the building. But even assuming they were working after Schmanke purchased the building, that they were employees of K-1 Realty, and that K-1 Realty is an integrated enterprise with K-1 Hospitality, this would raise the total number of employees in this "integrated enterprise" to 13. This still falls below the jurisdictional requirements of Title VII, the ADA, and the ADEA.

[42] *Sullivan v. Sullivan*, 2024 WL 4215626, at *5 (D. Kan. Aug. 13, 2024) (citing *Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997)).

[43] *Id.* (citing 28 U.S.C. § 1367(c)(3)).

[44] *Id.*

### D. Plaintiff's Motion to Deny Defendants' Motion

Plaintiff's Motion to Deny Defendants' Motion to Dismiss requests this Court to overlook Defendants' procedural arguments and allows Plaintiff's claims to proceed on the merits. For the reasons addressing Defendants' motions, the Court cannot do so. As such, Plaintiff's motion is denied as moot.

**IT IS THEREFORE ORDERED** that Defendant Schmanke's Motion to Dismiss (Doc. 11) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants K-1 Hospitality's Motion for Summary Judgment (Doc. 16) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Deny Defendant's Motion to Dismiss (Doc. 31) is **DENIED as MOOT**.

**IT IS SO ORDERED**.

This case is closed.

Dated this 7th day of March, 2025.

*[signature]*

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE